**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|                                         |   |                        |
|-----------------------------------------|---|------------------------|
| **MARY B. ELLIOTT,**                    | ) |                        |
| **Plaintiff,**                          | ) |                        |
| v.                                      | ) | **CIVIL NO. 3:09CV185**|
| **MICHAEL J. ASTRUE,**                  | ) |                        |
| **Commissioner of Social Security,**    | ) |                        |
| **Defendant.**                          | ) |                        |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Mary B. Elliott, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability ("DIB").  The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 8) be DENIED; that Defendant's motion for summary judgment (docket no. 11) be GRANTED; and that the final decision of the Commissioner be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

AFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed her current application for DIB on June 9, 2003, claiming disability due to fibromyalgia,[2] polymyalgia rheumatica,[3] non-insulin dependent diabetes mellitus (type II diabetes), pulmonary embolus, thrombophlebitis,[4] disc rupture in the lumbar spine, hypercholesterolemia,[5] fibrositis,[6] rectocele,[7] cystocele,[8] external hemorrhoids, edema, pain in her limbs, irritable bowel syndrome, hematochezia,[9] sprain/strain in the lumbar spine, and optical migraines. (R. at 112-14.) Initially, Plaintiff alleged that the disability's onset date was January 1, 2003. (R. at 113.) The date was amended, however, to June 20, 2003, to correspond with the date that she ceased employment. (R. at 93, 104, 128.) The Social Security

---

[2] Fibromyalgia is pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points. Dorland's Medical Dictionary 697 (30th ed. 2003).

[3] Polymyalgia rheumatica is myalgia affecting several muscles; a syndrome in the elderly characterized by proximal joint and muscle pain and a high erythrocyte sedimentation rate. Dorland's Medical Dictionary 1481 (30th ed. 2003).

[4] Thrombophlebitis is the inflammation of a vein associated with thrombus (stationary blood clot along the wall of a blood vessel) formation. Dorland's Medical Dictionary 1907 (30th ed. 2003).

[5] Hypercholesterolemia is excessive cholesterol in the blood. Dorland's Medical Dictionary 880 (30th ed. 2003).

[6] Fibrositis is inflammation especially of the muscle sheaths and fascial layers of the locomotor system; it is marked by pain and stiffness. Dorland's Medical Dictionary 698 (30th ed. 2003).

[7] Rectocele is a hernial protrusion of part of the rectum into the vagina. Dorland's Medical Dictionary 1597 (30th ed. 2003).

[8] Cystocele is a hernial protrusion of the urinary bladder, usually through the vaginal wall. Dorland's Medical Dictionary 466 (30th ed. 2003).

[9] Hematochezia is the passage of bloody feces. Dorland's Medical Dictionary 824 (30th ed. 2003).

Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[10] (R. at 39-49.) On June 21, 2006, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 612-14.) On October 26, 2006, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 29.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 8-11.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401

---

[10] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

3

(1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity"

4

(SGA).[11] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[12] based on an assessment of the claimant's residual functional capacity (RFC)[13] and the "physical and mental demands of work [the claimant] has done in the

---

[11] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[12] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[13] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and

past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 23.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of non-insulin dependent diabetes mellitus, fibromyalgia, and a history of deep venous thrombosis, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 23-25.) The ALJ next determined that Plaintiff had the RFC to perform the full range of work at the sedentary level, without any additional limitations. (R. at 26-27.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a general office worker or candy assembler because of the levels of exertion required in each position. (R. at 27.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 28.) Specifically, the ALJ found that Plaintiff could work as a receptionist. (R. at 28.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 28-29.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ failed to properly consider the opinions of her treating physicians; (2) the ALJ improperly evaluated her subjective complaints; and (3) the ALJ's finding at step five was not supported by substantial evidence. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 7-10.) Defendant argues in

opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 9-14.)

**1.     Plaintiff contends that the ALJ failed to properly consider the opinions of her treating physicians.**

Plaintiff contends that the ALJ failed to properly consider the opinions of her treating physicians: Drs. Moore, Miller, Marvin, Bassil, Paker, Witko, Devine, Ah, and Lee. (Pl.'s Mem. at 7-11.) During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines

on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Although it appears from a cursory review of the ALJ's decision that the ALJ failed to apply the treating physician rule because the decision contains no discussion of any treating physician's opinion, the Court finds upon a careful inspection of the record that the record does not, in fact, contain any opinions rendered by Plaintiff's treating physicians. While each of Plaintiff's physicians provided copies of Plaintiff's medical records containing objective medical evidence, they did not offer opinions in those records; nor did they offer opinions in a separate form on the subjects of the nature and severity of Plaintiff's impairments or regarding Plaintiff's physical capacity, limitations, or restrictions. Therefore, there were no treating physician's opinions for the ALJ to take into consideration, and there was no need to apply the treating physician rule.[14]

The ALJ considered all of the objective medical evidence provided by each of Plaintiff's treating physicians and appropriately weighed the evidence, along with the opinions of the DDS physicians who also reviewed the same medical evidence, in concluding that Plaintiff was not disabled. More specifically, the ALJ thoroughly considered the records of Dr. Moore (Plaintiff's primary care physician), Dr. Miller (Plaintiff's rheumatologist), Dr. Marvin (Plaintiff's

---

[14] Nor did the ALJ have a duty to obtain opinions from Plaintiff's treating physicians in order to more fully develop the record where Plaintiff was represented by counsel at the hearing before the ALJ, as she is now. See Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996) ("in *pro se* cases, ALJs have 'a duty to assume a more active role in helping claimants develop the record.'" (emphasis added)).
.

podiatrist), and Dr. Bassil (Plaintiff's cardiologist), and Dr. Parker (Plaintiff's gastroenterologist). (R. at 25, 233-38, 279-81, 390-530, 538-74, 601-03.) The physicians' notes and the diagnostic tests they ordered reveal that Plaintiff was progressing well, her symptoms were responding to her treatment and medications, her cardiac symptoms were only mild, and her foot pain required only "basic treatment." (R. at 390-99, 406, 538, 560, 667-69, 686.) The ALJ also reviewed the records of Dr. Witko (who treated Plaintiff while she was hospitalized in August 2002 and again in February 2004), Dr. Devine (who treated Plaintiff in the emergency room on November 2002), Dr. Ah (who treated Plaintiff in the emergency room in January 2004), and Dr. Lee (who treated Plaintiff in the emergency room in May 2004). (R. at 23-25, 231-32, 239-56, 282-96, 330-40.)

Because the Court finds that the ALJ was not required to apply the treating physician rule where the record did not contain any treating physician opinions; and because the ALJ nevertheless gave thorough consideration to the objective medical evidence supplied by Plaintiff's treating physicians, the Court recommends a finding that the ALJ's decision not to apply the rule was proper.

**2.      Plaintiff contends that the ALJ improperly evaluated her subjective complaints.**

Plaintiff argues that the ALJ improperly discounted her subjective complaints of pain. (Pl.'s Mem. at 7, 10.) After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective

10

symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923,

928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

At the hearing before the ALJ, in support of her subjective complaints of pain and limitations as a result of her impairments, Plaintiff testified that her diabetes causes her to have blurry vision, optical migraines, and aches in her legs; and that her fibromyalgia causes weakness, tenderness, and soreness all over her body, especially in her legs. (R. at 622-24.) She also stated that she suffers from back pain, and that the back surgery she had in 1975 helped at first, but then her condition deteriorated. (R. at 623.) She further stated that she is on Coumadin[15] for the rest of her life. (R. at 623.) With regard to her heart condition, Plaintiff testified that she has heart palpatations and feels pain from the center of her chest and around her left side to the middle of her back, and numbness down her right arm sometimes. (R. at 625.) However, she also stated that she is taking heart medication and that it seems to assist. (R. at 625.) She stated that she cannot tolerate walking much, she stumbles, and she had fallen nine times between her alleged onset date and the date of the hearing. (R. at 623, 631-32.) She testified that she is able to drive, and does so to obtain groceries, go to doctor's appointments,

---

[15] Coumadin is a brand name for the prescription drug Warfarin Sodium, an anticoagulant that acts by inhibiting vitamin K-dependent coagulation factors, and it is used to lower the chance of blood clots. Physician's Desk Reference 3457 (62nd ed. 2008).

and to go to church. (R. at 626-27.) She also added that she is able to shop independently for groceries; do some household chores; and attend church and Sunday school every Sunday, a Wednesday night prayer service occasionally, and a women's church group once a month. (R. at 627-28.) She said that she is also able to bathe herself and get in and out of the tub independently, but that she requires a stool when she showers because she sometimes feels like her legs may "give out." (R. at 632.)

It is clear from the ALJ's opinion that he performed a thorough analysis of both the subjective and objective medical evidence presented to him in making his determinations as to Plaintiff's credibility and RFC. The ALJ performed the required Craig analysis and provided an explicit rationale to support his conclusions. Specifically, the ALJ found that the Plaintiff had the severe impairments of non-insulin dependent diabetes mellitus, fibromyalgia, and a history of deep venous thrombosis, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23-25.) The ALJ then found that such impairments "could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 27.) The ALJ concluded in the same regard that Plaintiff's medical records and the opinions of the DDS physicians were inconsistent with the amount of pain Plaintiff allegedly experienced. (R. at 27.) He nonetheless credited Plaintiff's subjective complaints with some deference to the extent of concluding that she was limited to sedentary work. (R. at 27.)

Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC determinations are based on substantial evidence in the record

and application of the correct legal standard, and should not, therefore, be overturned.

3.      **Plaintiff contends that the ALJ's finding at step five was not supported by substantial evidence.**

At step five of the sequential analysis, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform, including the occupation of a receptionist. (R. at 28.) The ALJ reached this conclusion by applying Medical Vocational Guideline § 201.07. (R. at 28.) Plaintiff asserts that the ALJ's finding at step five was erroneous and not supported by substantial evidence because she satisfied the requirements for a finding of disabled under Medical Vocational Guideline § 201.04. (Pl.'s Mem. at 9.)

The Medical Vocational Guidelines ("Grids") can be used by the ALJ to determine a claimant's level of disability and potential for employment after the ALJ determines the claimant's RFC. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The Grids catagorize jobs by their physical-exertion requirements,[16] namely, sedentary,[17] light,[18] medium, heavy, and very heavy. See SSR 83-10. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels (Rule

---

[16] A claimant's exertional limitations determines the proper exertional level for the claimant's situation. See SSR 83-10. An exertional limitation is an impairment-caused limitation which affects one's capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying pushing, and pulling. SSR 83-10.

[17] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[18] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. . . . A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

204.00). SSR 83-10; 20 C.F.R. Pt. 404, Subpt. P, App. 2. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled."

Utilization of the Grids is predicated on the claimant suffering from exertional limitations, and the Grids are not applicable if the claimant suffers solely from nonexertional impairments. 20 C.F.R. § 404.1569a; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."). The reason for this rule is that nonexertional limitations may limit a claimant's ability to perform a full range of unskilled occupations at a given exertional level. Thus, where a claimant suffers only exertional limitations, the ALJ must consult the Grids to determine eligibility for benefits. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). At the same time, if a claimant suffers from both exertional and nonexertional limitations, then the ALJ must consult the Grids first to determine whether a rule directs a finding of disabled based on the strength requirement alone. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(2). If the claimant is found to be disabled on the strength requirement alone (i.e., a claimant is limited to light work and meets the other categories in rule 202.01), then there is no need to examine the effects of the nonexertional limitations. However, if a rule directs a finding of "not disabled" based on the strength requirement (i.e., the claimant is limited to light work and meets one of the categories in rule 202.10), then the ALJ cannot utilize

15

the Grids; instead, a VE must be utilized to take into account the effects of the claimant's nonexertional and exertional limitations and the claimant's RFC to determine whether there are jobs existing in significant numbers in the national economy that the claimant can perform. Walker, 889 F.2d 49-50.

Grid § 201.04 directs a finding of disabled where a claimant of advanced age (age 55 and over) has the education of a high school graduate or more, their education does not provide direct entry into skilled work, and their previous work experience was unskilled, or they have no previous work experience at all. Grid § 201.07 directs a finding of not disabled where a claimant of advanced age has the education of a high school graduate or more, their education does not provide direct entry into skilled work, and their previous work experience was skilled or semi-skilled with the skills being transferrable. Thus, the difference between a finding of disabled under Grid § 201.04, and a finding of not disabled under Grid § 201.07, is whether or not the claimant has previous skilled or semi-skilled work experience and whether or not she acquired transferrable skills. The ALJ found that Plaintiff's past relevant work as a general office worker was classified as semi-skilled or skilled, and that those skills would be transferrable such that she could work as a receptionist. (R. at 28.) Therefore, he found that under Grid § 201.07 Plaintiff was not disabled. (R. at 28.)

Plaintiff argues that the ALJ's finding that Plaintiff acquired transferrable skills is unsupported by substantial evidence. (Pl.'s Mem. at 9.) However, that finding was based on the testimony of the VE at the Plaintiff's hearing. (R. at 28, 635-36.) At the hearing, the VE testified that plaintiff's prior work as a general office worker was considered semi-skilled work. (R. at 634.) The ALJ then asked the VE whether Plaintiff would have acquired skills which are

16

transferrable to skilled or semi-skilled work at the sedentary level, and the VE responded that Plaintiff would have acquired skills, such as answering telephones, filing, and taking or reading reports, that would be transferrable to other work at a sedentary level, such as the work of a receptionist. (R. at 635-36.) The ALJ's finding that Plaintiff had acquired transferrable skills is, accordingly, supported by substantial evidence inasmuch as it is based upon the testimony of the VE.

Therefore, the Court recommends a finding that the ALJ's conclusions regarding whether Plaintiff can perform other jobs that exist in significant numbers in the national economy are based on substantial evidence in the record and application of the correct legal standard, and should not, therefore, be overturned.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 8) be DENIED; that Defendant's motion for summary judgment (docket no. 11) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure**

**shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                  /s/
                                        DENNIS W. DOHNAL
                                        UNITED STATES MAGISTRATE JUDGE

Date: January 21, 2010
Richmond, Virginia